FILED
2021 Dec-17  AM 11:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## <u>WESTERN DIVISION</u>

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **7:21-cr-00304-LSC-SGC** |
| | ) | |
| | ) | |
| **DAYQUAN A. HALEY** | ) | |

## PLEA AGREEMENT

The defendant agrees to plead guilty to **COUNT ONE** of the Indictment filed in the above numbered and captioned matter. In exchange, the United States Attorney, acting on behalf of the Government and through the undersigned Assistant United States Attorney, agrees to recommend the disposition specified below, subject to the conditions in paragraphs **VII** and **VIII**.

## <u>TERMS OF THE AGREEMENT</u>

## I. <u>MAXIMUM PUNISHMENT</u>

The defendant understands that the maximum statutory punishment that may be imposed for the crime of conspiracy to commit an offense (false statement to an FFL), in violation of Title 18, United States Code, Section 371, as charged in COUNT ONE, is:

      a.     Imprisonment for not more than 5 years;

Defendant's Initials D.H

b.    A fine of not more than $250,000; or,

c.    Both (a and b);

d.    Supervised release term of not more than 3 years; and

e.    Special Assessment Fee of $100.

*Furthermore, Title 18, United States Code, Section 924(e) states that:*

*In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen (15) years…"*

## II. **FACTUAL BASIS FOR PLEA**

The Government is prepared to prove, at a minimum, the following facts at the trial of this case:

### **MARCH 2020**

On March 11, 2020, the South Carolina Highway Patrol stopped Dayquan A. Haley and another individual, J.N., in Lexington, South Carolina. South Carolina officers recovered nineteen firearms in the car with Haley. Haley and J.N. both lived in Boston, Massachusetts. Law enforcement learned that individuals in Alabama were purchasing firearms for Haley to sell in Massachusetts. During interviews after the stop in Lexington, South Carolina, Haley asked for an attorney, but J.N. gave a timeline to law enforcement. J.N. advised that Haley went from Boston,

Page **2** of **17**    **Defendant's Initials** D • H

Massachusetts to Lexington, South Carolina on March 3, 2020. Haley left South Carolina with a friend of his to go to Tuscaloosa, Alabama on March 5, 2020.

J.N. stated that Haley got several of the firearms recovered in the vehicle from someone who had purchased them at "Wade's" on March 7, 2020 and March 9, 2020 when Haley was in Alabama. J.N. also stated that before Haley arrived back in South Carolina on March 10, 2020, he stopped in Atlanta and obtained some more firearms.

Fourteen of the firearms that law enforcement recovered were purchased by D.W. (a charged defendant) on March 7, 2020 and March 9, 2020 at Wade's Pawn Shop in Tuscaloosa, Alabama. On April 15, 2020, one of the firearms purchased by D.W. in Alabama on November 18, 2019, was used in a homicide in Boston, Massachusetts. Details of the purchases in March 2020 by D.W. for Haley and others are outlined below:

1. On March 7, 2020, D.W. purchased nine firearms from Three Factors Unlimited, Inc., doing business as Wade's Pawn Shop, a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code. The firearms include:

   a. Taurus .380 caliber pistol – serial number 1F168008
   b. Taurus .380 caliber pistol – serial number 1F160720
   c. Taurus .380 caliber pistol – serial number1F100002
   d. Taurus .380 caliber pistol – serial number 1F165063
   e. SCCY 9mm pistol – serial number786189
   f. Ruger .380 caliber pistol – serial number 372229343

      g.  Keltec .380 caliber pistol – serial number J0Q32
      h.  Tanfoglio .380 caliber pistol – serial number P001650
      i.  Keltec .32 caliber pistol – serial number D0C89

D.W. marked on the Department of Justice, Bureau of Alcohol, Tobacco,

Firearms and Explosives Form 4473, Firearm Transaction Record that he was the

actual purchaser of the firearms.

2.  On March 9, 2020, D.W. purchased five firearms from Three Factors

Unlimited, Inc., doing business as Wade's Pawn Shop, a licensed dealer of

firearms within the meaning of Chapter 44, Title 18, United States Code. The

firearms include:

      a.  Taurus 9mm pistol – serial number AAL031399
      b.  Springfield 9mm pistol – serial number S3908642
      c.  Smith & Wesson 9mm pistol – serial number FXV9365
      d.  Taurus 9mm pistol – serial number TMU07213
      e.  Glock .380 caliber pistol – serial number ADAT454

D.W. marked on the Department of Justice, Bureau of Alcohol, Tobacco,

Firearms and Explosives Form 4473, Firearm Transaction Record that he was the

actual purchaser of the firearms.

Law enforcement then interviewed F.W. (a charged defendant) at F.W.'s

apartment and learned that F.W. and Haley are cousins. Haley asked F.W. if he knew

anyone that could purchase firearms. F.W. and Haley started dealing with D.W. and

D.W. purchased firearms for F.W. and Haley. Haley would tell F.W. when he was

coming to Alabama to pick up firearms and F.W. would make sure he had some for Haley to take back to sell in Massachusetts. F.W. stated that he set up the firearms transactions with D.W., but everyone knew that D.W. was purchasing the firearms for Haley. Haley paid F.W. $200 for arranging the firearms transactions. F.W. confirmed that S.G. (a charged defendant) also bought firearms for Haley. F.W. told law enforcement that Haley could charge more for the firearms in Massachusetts.

F.W. also confirmed that right before the stop in South Carolina where Haley had nineteen firearms in the vehicle with him, Haley had his friend drive him from South Carolina to Alabama. J.N. was in the car with Haley during the stop and F.W. gave the same information about Haley's friend driving Haley to Alabama from South Carolina.

Law enforcement also interviewed F.W.'s roommate, J.R. Officers found some gun locks in a drawer in a spare bedroom. J.R. said the gun locks were left there by Haley. J.R. stated that Haley had someone from Tuscaloosa purchase the firearms, and that when Haley was leaving, everything would not fit in Haley's bookbag and the boxes, so he left the gun locks at the apartment. F.W. also confirmed that Haley left the gun locks and that Haley got the firearms from Tuscaloosa.

Officers also obtained some information from another individual who described Haley's involvement with firearms. They advised that when Haley comes

Page **5** of **17**    **Defendant's Initials** $\underline{\smash{\text{D}\,\text{o}\,\text{H}}}$

to Alabama, they know Haley is coming to get firearms to take them back to Massachusetts to sell for double the money. They also advised that F.W. was Haley's middleman and that there were individuals in Uniontown purchasing firearms for Haley through F.W.

**JULY 2020**

On July 20, 2020, Uniontown police officers observed several people loitering and drinking beer at E&C Event Center. A black Kia Sorento with a Maryland tag did not leave the premises when instructed by law enforcement to leave. Haley and D.C. (a charged defendant) were in the vehicle. The vehicle had been rented by D.C.'s girlfriend. Officers saw marijuana inside the vehicle and smelled marijuana coming from the vehicle. Haley was sitting in the front passenger seat of the vehicle and D.C. approached officers and told them the vehicle was his.

Officers searched the vehicle and found marijuana, a marijuana grinder, a set of digital scales, and ammunition in the front of the vehicle. In the back of the vehicle, officers found a suitcase. The suitcase had clothes in it, but under the clothes, officers found ten firearms and additional ammunition. Seven of the firearms appeared to be brand new and were still in the boxes. D.C. claimed the firearms at the scene, so officers released Haley.

Eight of the firearms were purchased by J.B. (a charged defendant) on July 8, 2020 and on that same day (July 20, 2020) at Wade's Pawn Shop. Details of the firearms purchases by J.B. in July 2020 are outlined below:

1. On July 8, 2020, J.B. purchased five firearms from Three Factors Unlimited, Inc., doing business as Wade's Pawn Shop, a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code. The firearms include:

   a. a Keltec 9mm pistol bearing serial number AAA627,
   b. a Taurus 9mm pistol bearing serial number TMC91151 (not recovered with HALEY and D.C. on July 20, 2020),
   c. a Taurus 9mm pistol bearing serial number ABE615559,
   d. a Taurus 9mm pistol bearing serial number ABE587326,
   e. a Taurus 9mm pistol bearing serial number ABE605240 (not recovered with HALEY and D.C. on July 20, 2020)

2. At Collins' direction, on July 20, 2020, J.B. purchased five firearms from Three Factors Unlimited, Inc., doing business as Wade's Pawn Shop, a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code. The firearms include:

   a. a SCCY 9mm pistol, bearing serial number 430214
   b. a New England .32 caliber pistol bearing serial number NE005470,
   c. a Taurus 9mm pistol bearing serial number ABE583755,
   d. a Kahr .40 caliber pistol bearing serial number JN8651, and
   e. a Taurus .380 caliber pistol bearing serial number 1F056812

Page **7** of **17**     **Defendant's Initials** D.H

Officers obtained video surveillance and learned that Haley was in the store with J.B. and D.C. earlier that day before his contact with law enforcement. The video showed that on July 20, 2020, the same black Kia Sorento pulled into the parking lot at Wade's Pawn Shop. Haley exited from the front passenger seat. J.B. exited from the back and D.C exited from the driver's seat. All three individuals went into the store and all three individuals handled different firearms and took photographs of firearms with their cell phones. Haley exited the store first and got back into the front passenger seat. D.C. exited, then J.B exited with the firearms he purchased.

One of the other firearms in Haley and D.C's possession at the E&C Event Center was purchased at Blue Bore Armory in Demopolis by another known associate of Haley and D.C.

Officers interviewed D.C. after they released Haley. D.C. stated that the firearms belonged to his cousin, J.B, and that they were on the way to take them to J.B.'s mother's house. D.C. told officers that him and Haley were with J.B. when J.B. purchased the firearms. D.C. confirmed that Haley knew the firearms were in the vehicle with him and Haley.

At the request of ATF, law enforcement found Haley and brought him back in for an interview. Haley denied any involvement in firearms trafficking. When

confronted with being caught with nineteen firearms in South Carolina and with what the others had said about him, Haley told the officers "that's their word against mine." When confronted with messages between him and F.W., Haley stated that he never gave money to anyone to buy firearms. Haley claimed that the nineteen firearms in the vehicle in South Carolina belonged to someone else and he claimed that the ten firearms in the vehicle in Uniontown belonged to D.C. Haley denied that he had been to Wade's Pawn Shop with J.B. and D.C. earlier that day. However, video surveillance showed that Haley was not being truthful.

**The defendant hereby stipulates that the facts stated above are substantially correct and that the Court can use these facts in calculating the defendant's sentence. The defendant further acknowledges that these facts do not constitute all of the evidence of each and every act that the defendant and/or any co-conspirators may have committed.**

**DAYQUAN A. HALEY**

## III. RECOMMENDED SENTENCE

Subject to the limitations in paragraph **VIII** regarding subsequent conduct and pursuant to Rule 11(c)(1)(B), Fed.R.Crim.P., the government will recommend the following disposition:

Page **9** of **17**     Defendant's Initials

(a)   That the defendant be awarded an appropriate reduction in offense level for acceptance of responsibility;

(b)   That the defendant be remanded to the custody of the Bureau of Prisons and incarcerated for a term consistent within the guidelines;

(c)   That following the said term of imprisonment, the defendant be placed on supervised release for a period to be determined by the court, subject to the standard conditions of supervised release as set forth in U.S.S.G § 5D1.3;

(d)   That the defendant be required to pay a fine in accordance with the sentencing guidelines, said amount due and owing as of the date sentence is pronounced, with any outstanding balance to be paid in full by the expiration of the term of supervised release; and

(e)   That the defendant pay a special assessment fee of $100, said amount due and owing as of the date sentence is pronounced.

## IV. WAIVER OF RIGHT TO APPEAL AND POST-CONVICTION RELIEF

In consideration of the recommended disposition of this case, I, **DAYQUAN A. HALEY,** hereby waive and give up my right to appeal my

conviction and/or sentence in this case, as well as any fines, restitution, and forfeiture orders, the court might impose. Further, I waive and give up the right to challenge my conviction and/or sentence, any fines, restitution, forfeiture orders imposed or the manner in which my conviction and/or sentence, any fines, restitution, and forfeiture orders were determined in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255.

The defendant reserves the right to contest in an appeal or post-conviction proceeding either or both of the following:

    (a)    Any sentence imposed in excess of the applicable statutory maximum sentence(s);

    (b)    Any sentence imposed in excess of the guideline sentencing range determined by the court at the time sentence is imposed; and

    (c)    Any claims of ineffective assistance of counsel.

The defendant acknowledges that before giving up these rights, the defendant discussed the Federal Sentencing Guidelines and their application to the defendant's case with the defendant's attorney, who explained them to the

Page 11 of 17    Defendant's Initials _____

**defendant's satisfaction. The defendant further acknowledges and understands that the government retains its right to appeal where authorized by statute.**

**I, DAYQUAN A. HALEY, hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.**

**DAYQUAN A. HALEY**

## V. UNITED STATES SENTENCING GUIDELINES

Defendant's counsel has explained to the defendant, that in light of the United States Supreme Court's decision in United States v. Booker, the federal sentencing guidelines are **advisory** in nature. Sentencing is in the court's discretion and is no longer required to be within the guideline range. The defendant agrees that, pursuant to this agreement, the court may use facts it finds by a preponderance of the evidence to reach an advisory guideline range, and the defendant explicitly waives any right to have those facts found by a jury beyond a reasonable doubt.

## VI. AGREEMENT NOT BINDING ON COURT

The defendant fully and completely understands and agrees that it is the Court's duty to impose sentence upon the defendant and that any sentence recommended by the government is **NOT BINDING UPON THE COURT,** and that the Court is not required to accept the government's recommendation. Further,

Page **12** of **17**     Defendant's Initials _D. H_

the defendant understands that if the Court does not accept the government's recommendation, the defendant does not have the right to withdraw the guilty plea.

## VII. VOIDING OF AGREEMENT

The defendant understands that should the defendant move the Court to accept the defendant's plea of guilty in accordance with, or pursuant to, the provisions of North Carolina v. Alford, 400 U.S. 25 (1970), or tender a plea of *nolo contendere* to the charges, this agreement will become NULL and VOID. In that event, the government will not be bound by any of the terms, conditions, or recommendations, express or implied, which are contained herein.

## VIII. SUBSEQUENT CONDUCT

**The defendant understands that should the defendant violate any condition of pretrial release or violate any federal, state, or local law, or should the defendant say or do something that is inconsistent with acceptance of responsibility, the United States will no longer be bound by its obligation to make the recommendations set forth in paragraph III of the Agreement, but instead, may make any recommendation deemed appropriate by the United States Attorney in his sole discretion.**

## IX. OTHER DISTRICTS AND JURISDICTIONS

The defendant understands and agrees that this agreement **DOES NOT BIND** any other United States Attorney in any other district, or any other state or local authority.

## X. <u>AGREEMENT REGARDING RELEVANT CONDUCT AND RESTITUTION</u>

As part of the defendant's plea agreement, the defendant admits to the above facts associated with the charges and relevant conduct for any other acts. The defendant understands and agrees that the relevant conduct contained in the factual basis will be used by the Court to determine the defendant's range of punishment under the advisory sentencing guidelines. The defendant admits that all of the crimes listed in the factual basis are part of the same acts, scheme, and course of conduct. This agreement is not meant, however, to prohibit the United States Probation Office or the Court from considering any other acts and factors which may constitute or relate to relevant conduct. Additionally, if this agreement contains any provisions providing for the dismissal of any counts, the defendant agrees to pay any appropriate restitution to each of the separate and proximate victims related to those counts should there be any.

## XI. <u>TAX, FORFEITURE AND OTHER CIVIL/ADMINISTRATIVE PROCEEDINGS</u>

Unless otherwise specified herein, the defendant understands and

acknowledges that this agreement does not apply to or in any way limit any pending or prospective proceedings related to the defendant's **tax liabilities**, if any, or to any pending or prospective **forfeiture** or other **civil** or **administrative** proceedings.

The defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which the defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. The defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

## XII. DEFENDANT'S UNDERSTANDING

I have read and understand the provisions of this agreement consisting of 17 pages. I have discussed the case and my constitutional and other rights with my lawyer. I am satisfied with my lawyer's representation in this case. I understand that by pleading guilty, I will be waiving and giving up my right to continue to plead not guilty, to a trial by jury, to the assistance of counsel at that trial, to confront,

cross-examine, or compel the attendance of witnesses, to present evidence in my behalf, to maintain my privilege against self-incrimination, and to the presumption of innocence. I agree to enter my plea as indicated above on the terms and conditions set forth herein.

**NO OTHER PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO INDUCE ME TO PLEAD GUILTY.**

I further state that I have not had any drugs, medication, or alcohol within the past 48 hours except as stated here:

I understand that this Plea Agreement will take effect and will be binding as to the Parties **only** after all necessary signatures have been affixed hereto.

I have personally and voluntarily placed my initials on every page of this Agreement and have signed the signature line below to indicate that I have read, understand, and approve all of the provisions of this Agreement, both individually and as a total binding agreement.

_12-16-21_
DATE

_Dayqwan Haley_
**DAYQUAN A. HALEY**

Page **16** of **17**      Defendant's Initials _D.H_

## XIII. COUNSEL'S ACKNOWLEDGMENT

I have discussed this case with my client in detail and have advised my client of all of my client's rights and all possible defenses. My client has conveyed to me that my client understands this Agreement and consents to all its terms. I believe the plea and disposition set forth herein are appropriate under the facts of this case and are in accord with my best judgment. I concur in the entry of the plea on the terms and conditions set forth herein.

12-16-21
DATE

DON COLEE, ESQ.
Defendant's Counsel

## XIV. GOVERNMENT'S ACKNOWLEDGMENT

I have reviewed this matter and this Agreement and concur that the plea and disposition set forth herein are appropriate and are in the interests of justice.

PRIM F. ESCALONA
United States Attorney

12-17-21
DATE

KRISTY PEOPLES
Assistant United States Attorney

Page **17** of **17**    Defendant's Initials _D. H_